IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

KENNETH MCINTIRE, Individually, and as
Surviving Spouse and Executor of the
ESTATE OF MARTHA MCINTIRE,
Deceased,

  Plaintiff,

v.

RIVEN E. VENTURA, et al.,

  Defendants.

CIVIL ACTION NO.: 4:20-cv-319

**O R D E R**

This matter is before the Court on Plaintiff Kenneth McIntire's Motion to Remand, (doc. 51), and a Joint Motion to Dismiss Defendant County Hall Insurance Co. filed by several of the Defendants, (doc. 7). Also before the Court are Plaintiff's Motion to Amend the Complaint to Add Cottrell, Inc. as a Party Defendant, (doc. 46), Defendant Romulus Insurance Risk Retention Group, Inc.'s Motion for Judgment on the Pleadings, (doc. 5), and Defendant Westchester Fire Insurance Company's Motion to Dismiss, (doc. 10). McIntire initially filed this action in the State Court of Bryan County against Defendants Riven E. Ventura, Riven Benavi, Inc., M&M Carrier Trucking, Inc., County Hall Insurance Co., Sentry Insurance Co., Donnie W. Desue, URS Midwest, Inc. d/b/a United Road and United Road Services, Inc., Romulus Insurance Risk Retention Group, Inc., Westchester Fire Insurance Company, Publix Super Markets, Inc., Bestway Refrigerated Services, Inc., PACCAR, Inc., and John Doe Corporations A-Z, after he was injured and his wife was killed in a multi-vehicle collision. (See doc. 1-1.)  Defendant Sentry Insurance Co. removed the case to this Court, (doc. 1), and then several of the corporate Defendants filed a

Joint Motion to Dismiss Defendant County Hall Insurance Co. ("County Hall"), arguing that Plaintiff had fraudulently joined County Hall, (doc. 7).  Plaintiff then filed his Motion to Remand. (Doc. 51.)  For the reasons explained more fully below, the Court **DENIES** Plaintiff's Motion to Remand, (id.), and **GRANTS** Defendants' Joint Motion to Dismiss County Hall, (doc. 7).  The Court also **GRANTS** McIntire's Motion to Amend.  (Doc. 46.)  Finally, the Court **DENIES** Defendant Romulus Insurance Risk Retention Group, Inc.'s Motion for Judgment on the Pleadings, (doc. 5), and **DENIES** Defendant Westchester Fire Insurance Company's Motion to Dismiss, (doc. 10).

## BACKGROUND

Plaintiff is a resident of North Carolina.  (Doc. 1-1, p. 8.)  According to the Complaint, on or about July 26, 2018, Plaintiff was traveling on I-95.  (Id. at pp. 12, 15.)  Ventura allegedly was also on I-95, driving southbound in a 2012 Freightliner Tractor Trailer ("Freightliner").  (Id. at p. 12.)  Ventura was allegedly an "agent and/or employee" of M&M Carrier Trucking, Inc. ("M&M"), and M&M allegedly owned the Freightliner.[1]  (Id. at p. 13.)  According to the Complaint, Ventura negligently tried to change lanes while operating the Freightliner on I-95.  (Id. at pp. 14–17.)  As he changed lanes, Ventura allegedly collided with a 2017 Peterbilt Tractor Trailer ("Peterbilt") operated by Desue.  (Id. at p. 14.)  Desue was allegedly "an agent and/or employee" of URS Midwest, Inc. d/b/a United Road and United Road Services, Inc. ("United Road"), and United Road allegedly owned the Peterbilt.  (Id.)

After the collision, the Peterbilt (while still being operated by Desue) allegedly hit the vehicle that Plaintiff was driving, and in which his wife was a passenger, causing it "to spin and

---

[1] Plaintiff alternatively alleges that "the Freightliner was owned by Defendant Ventura, either directly or through his personal corporation, Riven Benavi, Inc., a Florida Corporation that was administratively dissolved in 2019."  (Doc. 1-1, p. 13.)

become pinned between the guardrail and the Peterbilt." (Id. at p. 15.) The Complaint further states that the Peterbilt caught on fire and spilled fuel onto Plaintiff's vehicle, causing it to also catch on fire. (Id.) Plaintiff allegedly suffered severe injuries and his wife died as a result of the crash. (Id.)

Plaintiff filed his Complaint on November 16, 2020 in the State Court of Bryan County. (See id. at p. 6.) The Complaint asserts several claims against Defendants including a "direct action" claim against County Hall "[p]ursuant to O.C.G.A. § 40–1–112 and O.C.G.A. § 40–2–140." (Id. at p. 24.) According to the Complaint, County Hall is a North Carolina corporation[2] and "is the insurance carrier" for M&M. (Id. at p. 9.) Plaintiff alleges that he "is entitled to receive payments from County Hall for the tort liability of Defendants M&M and Ventura upon a judgment in this matter." (Id. at p. 24.) According to the insurance policy issued by County Hall to M&M ("the Policy"), County Hall "has been organized and incorporated as a captive insurance, risk retention group company."[3] (Doc. 66-1, p. 55.) County Hall's articles of incorporation state that the company's full name is County Hall Insurance Company, Inc., A Risk Retention Group. (Doc. 7-1, p. 2.) The Policy also provides notice that "[t]he policy for which you are applying is issued by a risk retention group. The risk retention group may not be subject to all insurance laws and regulations of your state of domicile." (Doc. 66-1, p. 6.) In addition, it states that, "[a]s required under the Federal Risk Retention Act all insureds of the Company must also be members of County Hall Holdings, LLC (Holdings), accordingly each insured will purchase one Class B membership unit in Holdings." (Id. at p. 55.) In turn, the County Hall Holdings, LLC's articles of incorporation

---

[2] County Hall is the only Defendant that Plaintiff alleges is domiciled in North Carolina where Plaintiff also resides. (See doc. 1-1, pp. 8–11.)

[3] County Hall was originally incorporated in Hawaii, but in 2016 it applied "for licensure as a North Carolina risk retention group captive insurance company." (Doc. 7-2, p. 2.) The North Carolina Department of Insurance approved this application. (Id.)

3

provide that any member of County Hall Holdings, LLC must be "insured under a policy of insurance issued by County Hall Insurance Company, Inc., A Risk Retention Group ('RRG')." (Id. at p. 61.)  In addition, according to the articles of incorporation, County Hall Holdings, LLC was formed "to be the sole shareholder" of County Hall.  (Id. at p. 62.)

The Complaint also alleges claims against Romulus Insurance Risk Retention Group, Inc. ("Romulus") and Westchester Fire Insurance Company ("Westchester").  (Doc. 1-1, pp. 27–29.) According to the Complaint, Romulus, a South Carolina corporation, and Westchester, an Iowa corporation, are "the insurance carrier[s] for Defendant United Road." (Id. at pp. 10–11.)  Plaintiff asserts direct action claims under O.C.G.A. § 40–1–112 and O.C.G.A. § 40–2–140 against Romulus and Westchester.  (Id. at pp. 28–29.)  According to the Complaint, both Romulus and Westchester were "insurer[s] of United Road at all times relevant to the allegations in this Complaint and provided liability insurance coverage for the motor carrier involved in the [at-issue] collision."  (Id. at pp. 27–28.)  Plaintiff claims that he "is entitled to receive payments" from Romulus and Westchester Fire "for the tort liability of Defendants United Road and Desue upon a judgment in this matter."  (Id. at pp. 28–29.)

Sentry Insurance Co. removed the case to this Court on December 21, 2020.  (Doc. 1.) Several Defendants filed a Joint Motion to Dismiss County Hall.  (Doc. 7.)  Plaintiff filed a Response to the Motion, (doc. 44), and County Hall filed a Reply, (doc. 66).  Plaintiff also filed a Motion to Remand, (doc. 51), and Defendants jointly filed a Response, (doc. 67).  In addition to the Motions connected to the remand issue, Plaintiff also filed a Motion to Amend the Complaint to Add Cottrell, Inc. as a Party Defendant.  (Doc. 46.)  Romulus filed a Motion for Judgment on the Pleadings.  (Doc. 5.)  Plaintiff filed a Response to this Motion, (doc. 39), and Romulus filed a

Reply, (doc. 57). Finally, Westchester filed a Motion to Dismiss, (doc. 10), and Plaintiff filed a Response, (doc. 45).

## LEGAL STANDARD

Actions initially filed in a state court may be removed to federal court in two circumstances: (1) where the claim presents a federal question; or (2) where diversity jurisdiction exists. 28 U.S.C. § 1441(a–b). Federal courts, as courts of limited jurisdiction, must remand a case removed on diversity grounds where there is not complete diversity of citizenship between the parties or where one of the named defendants is a citizen of the state in which the suit is filed. 28 U.S.C. § 1441(b). In this circuit, "there is a presumption *against* the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001) (emphasis added), *abrogated on other grounds by* Overlook Gardens Props., LLC v. ORIX USA, L.P., 927 F.3d 1194, 1202 (11th Cir. 2019).

Even so, courts may retain jurisdiction and "ignore the presence of [a] non-diverse defendant" where the plaintiff fraudulently joined that defendant solely to defeat federal diversity jurisdiction. Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011).

> To establish fraudulent joinder, 'the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'

Id. at 1332 (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)) (alterations omitted).

When ruling on a motion to remand, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538. In making this determination, "federal

courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id. Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440–41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993); see also Stillwell, 663 F.3d at 1333 (reversing a district court's denial of a motion to remand and holding that the district court erred in concluding the defendant was fraudulently joined because "at the very least, [it is] possible that a Georgia state court would conclude that" the plaintiff's complaint stated a cause of action against the defendant given Georgia's notice pleading standards).

The burden of establishing fraudulent joinder "is a heavy one," and such a claim must be supported by clear and convincing evidence. Stillwell, 663 F.3d at 1332 (internal quotations omitted). In addressing a fraudulent joinder claim, "this Court 'must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.'" McKenzie v. King Am. Finishing, Inc., No. 6:12-cv-065, 2012 WL 5473498, at *3 (S.D. Ga. Nov. 9, 2012) (quoting Stillwell, 663 F.3d at 1334). In contrast to the federal pleading standard, Georgia simply requires notice pleading. See O.C.G.A. § 9–11–8. Thus, "it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain. The true test is whether the pleading gives fair notice . . . ." Carley v. Lewis, 472 S.E.2d 109, 110–11 (Ga. Ct. App. 1996).

## DISCUSSION

In response to Plaintiff's Motion to Remand, several of the corporate Defendants invoke the fraudulent joinder doctrine (which they initially raised in their Notice of Removal and Motion

6

to Dismiss Defendant County Hall), contending that County Hall should be dismissed from this suit and disregarded for jurisdictional purposes. (Doc. 67; see also doc. 7.) As this issue goes to the heart of whether the Court has jurisdiction to hear this case, the Court will address it first. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th 1999) ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."). The Court will then examine in turn Plaintiff's Motion to Amend, (doc. 46), Romulus's Motion for Judgment on the Pleadings, (doc. 5), and Westchester's Motion to Dismiss, (doc. 10).

I.     **Motion to Remand and Defendants' Motion to Dismiss County Hall**

Defendants argue Plaintiff has no actionable claim against County Hall, and Plaintiff only named County Hall as a Defendant to thwart federal subject-matter jurisdiction. (See doc. 7; doc. 67.) Defendants removed this action by asserting that this Court has jurisdiction "because Plaintiff's citizenship is diverse from the properly named defendants, and the amount in controversy exceeds $75,000." (Doc. 1, p. 3.) County Hall is allegedly domiciled in North Carolina (the same state where Plaintiff resides), and its presence in the suit destroys complete diversity if it is a proper party. See Ingram v. CSX Transp., Inc., 146 F.3d 858, 861 (11th Cir. 1998) ("It is axiomatic that lack of complete diversity between the parties deprives federal courts of jurisdiction over a lawsuit."). Thus, as explained above, the Court must determine whether there exists a "possibility that a state court would find that the complaint states a cause of action against" County Hall. See Coker, 709 F.2d at 1440.

In his Complaint, Plaintiff states that, "[p]ursuant to O.C.G.A. § 40–1–112 and O.C.G.A. § 40–2–140, County Hall is subject to this direct action" because "County Hall was the insurer of M&M at all times relevant to the allegations in this Complaint and provided liability insurance coverage for the motor carrier involved in the [at-issue] collision." (Doc. 1-1, p. 24.)

Under Georgia law, "[t]he general rule is that because there is no privity of contract, a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured." Hartford Ins. Co. v. Henderson & Son, Inc., 371 S.E.2d 401, 402 (Ga. 1988). "However, Georgia has codified statutory exceptions to this rule, the direct action statutes, which permit a direct action by an injured party against an insurance carrier which insures a motor carrier." Nat'l Indem. Co. v. Lariscy, 835 S.E.2d 307, 311 (Ga. Ct. App. 2019) (citing O.C.G.A. §§ 40–1–112, 40–2–140). Defendants argue that the direct action statutes do not apply to County Hall because it is a risk retention group rather than a traditional insurance carrier. (Doc. 7, pp. 5–6; doc. 67, pp. 6–8.)

In response, Plaintiff asserts that Defendants have not shown that County Hall is a risk retention group. (Doc. 44, pp. 5–11; doc. 51, p. 8.)  A risk retention group is "any corporation or other limited liability association whose primary activity consists of assuming, and spreading all, or any portion, of the liability exposure of its group members" and is organized primarily for that purpose. 15 U.S.C. § 3901(4)(A)–(B). It must be "chartered or licensed as a liability insurance company under the laws of a State" and must be authorized to engage in the insurance business under that State's laws. Id. at § 3901(4)(C). A risk retention group cannot "exclude any person from membership in the group solely to provide for members of such a group a competitive advantage over such a person." Id. at § 3901(4)(D). In addition, it must have "as its sole owner an organization which has as- (I) its members only persons who comprise the membership of the risk retention group; and (II) its owners only persons who comprise the membership of the risk retention group and who are provided insurance by such group" and the members must be in similar activities or businesses with regards to liability. Id. at § 3901(4)(E)(ii)–(F).[4] It also cannot

---

[4] Alternatively, a risk retention group can have "as its owners only persons who comprise the membership of the risk retention group and who are provided insurance by such group." 15 U.S.C.A. § 3901.

issue insurance or reinsurance that does not involve "assuming and spreading all or any portion" of the liability from the similar activities or business. Id. at § 3901(4)(G). Finally, it must "include[] the phrase 'Risk Retention Group'" in its name. Id. at § 3901(4)(H).

Here, Plaintiff does not specify which risk retention group requirements he believes County Hall does not meet. (Doc. 44, pp. 9–12.) Plaintiff's primary argument is that Defendants cannot rely on information outside the pleadings to show that County Hall is a risk retention group. (Id. at p. 10.) However, the United States Court of Appeals for the Eleventh Circuit has made clear that a district court may consider evidence outside of the pleadings when determining whether a party has been fraudulently joined. See Crowe, 113 F.3d at 1538 ("The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."). The United States Court of Appeals for the Fifth Circuit has further explained that, "[w]hile we have frequently cautioned the district courts against pretrying a case to determine removal jurisdiction, we have also endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims." Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995) (quotations omitted). Part of this procedure includes examining "summary judgment-type evidence." Ford v. Elsbury, 32 F.3d 931, 935 (5th Cir. 1994). Accordingly, the Court will consider evidence outside of the pleadings to determine whether County Hall is fraudulently joined in this action.

It is clear from the record that County Hall's full name is County Hall Insurance Company, Inc., A Risk Retention Group. (Doc. 7-1, p. 2.) In addition, the Policy states that anyone insured by County Hall must be a member of County Hall Holdings, LLC ("Holdings") and "purchase one Class B membership unit in Holdings." (Doc. 66-1, p. 55.) Moreover, Holdings' articles of incorporation state that it is the "sole shareholder" of County Hall and that all of its members are

"insured under a policy of insurance issued by County Hall Insurance Company, Inc., A Risk Retention Group." (Id. at pp. 61–62.) Thus, County Hall meets the statutory requirements concerning organizational structure, ownership, and spreading liability amongst members. Furthermore, the record is also clear that North Carolina has approved County Hall's application "for licensure as a North Carolina risk retention group captive insurance company." (Doc. 7-2, p. 2.) Courts have previously found that it is sufficient for a company to show that it is licensed by a state to prove that it is a risk retention group. See, e.g., Allied Pros. Ins. Co. v. Harmon, No. 8:16-cv-01864-JLS-KES, 2017 WL 5634600, at *6 (C.D. Cal July 28, 2017) ("[T]he Court accepts Allied's Certification of Authority and California and Washington licenses as sufficient to establish that Allied qualifies as a risk retention group."). Finally, the Policy provides notice in multiple places that it "is issued by a risk retention group" and "[t]he risk retention group may not be subject to all insurance laws and regulations of your state of domicile." (Doc. 66-1, pp. 6, 9.) In the face of the evidence supplied by Defendants, Plaintiff provides no evidence of his own concerning County Hall's status as a risk retention company and relies only on his own allegations in his Complaint.[5] (Doc. 51, pp. 6–9.) This is insufficient for a plaintiff to succeed on a motion to remand where the opposing party puts forth evidence beyond the pleadings. See Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005) ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."). For all of these reasons, the Court finds that County Hall is a risk retention group.

---

[5] The only support Plaintiff offers in an effort to prove County Hall is not, or might not be, a risk retention group is the fact that its full name is "County Hall *Insurance Co.*, a Risk Retention Group." (Doc. 44, p. 11 (emphasis added).) While, in the absence of any other evidence, this might raise some question about County Hall's true status, the overwhelming evidence supplied by County Hall supports a finding that it is a risk retention group. Moreover, the remainder of County Hall's name makes clear that it is "a Risk Retention Group."

Because County Hall is a risk retention group, the Court must determine whether Plaintiff can sue it under Georgia's direct action statutes. Defendants argue that the Liability Risk Retention Act of 1986 ("LRRA") preempts Georgia law regarding direct action against risk retention groups. (Doc. 7, pp. 5–6.) The LRRA provides in part that "a risk retention group is exempt from any State law. . . to the extent that such law . . . would make unlawful, or regulate, directly or indirectly, the operation of a risk retention group." 15 U.S.C. § 3902(a)(1). "The Supremacy Clause provides that the laws and treaties of the United States 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" Mut. Pharm. Co. v. Bartlett, 570 U.S. 472, 479 (2013) (alterations in original) (quoting U.S. Const., art. VI, cl. 2). "Accordingly, it has long been settled that state laws that conflict with federal law are 'without effect.'" Id. at 479–80 (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)). The Georgia Supreme Court has directly examined whether the LRRA preempts Georgia direct action statutes stating that:

> The clear goal of the LRRA is to streamline the operations of risk retention groups . . . by subjecting them to consistent regulation overseen by their chartering state. The direct action statutes subject insurers of motor carriers to lawsuits as parties, and thus, exposes them directly to liability and any consequent damages. As such, direct action statutes both directly and indirectly regulate the operations of insurers of motor carriers in Georgia. While this type of regulating may be permissible with respect to traditional insurance carriers, it is not allowed in the case of a foreign risk retention group by the express act of Congress in the LRRA. And, we cannot disregard Congress's command. In summary, application of the direct action statutory provisions, O.C.G.A. §§ 40–1–112 (c), 40–2–140 (d) (4), to [a] risk retention group . . . is preempted by the LRRA.

Reis v. OOIDA Risk Retention Grp., Inc., 814 S.E.2d 338, 343 (Ga. 2018). Accordingly, the Court finds that Plaintiff cannot bring a direct action against County Hall under O.C.G.A. §§ 40–1–112, 40–2–140. Thus, the Court **GRANTS** Defendants' Joint Motion to Dismiss County Hall, (doc.

11

7), and **DENIES** Plaintiff's Motion to Remand, (doc. 51), which was based solely on the argument that County Hall's presence in this case precluded the Court from exercising diversity jurisdiction.

## II. Motion to Amend

Plaintiff also filed a Motion to Amend the Complaint to Add Cottrell, Inc. as a Party Defendant, (doc. 46), and attached a Proposed First Amended Complaint, (doc. 46-1). Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleadings with the court's leave, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may deny leave to amend because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). In addition, pursuant to Federal Rule of Civil Procedure 20(a)(2), a plaintiff may only join a defendant in an action with other defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The Eleventh Circuit has explained that "[i]n determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims." Alexander v. Fulton Cty., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by* Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). To that end, "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." Id. (quoting Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)). Ultimately, "[i]n making a joinder decision, the district court is guided by the underlying purpose of joinder, which is to 'promote trial

12

convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.'" Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002) (per curiam) (quoting Alexander, 207 F.3d at 1323.)

In his proposed Amended Complaint, Plaintiff seeks to add Cottrell, Inc. ("Cottrell") and to assert strict liability, negligence, and failure to warn claims against the company. (Doc. 46-1, pp. 31–34.) Plaintiff alleges that at the time of the July 26, 2018 crash the Peterbilt was attached to a car transport trailer ("Auto Hauler") "which was designed, manufactured, marketed and sold by Defendant Cottrell." (Id. at p. 10; see also doc. 46, pp. 4–5.) Plaintiff further states "that the design of the Auto Hauler, in connection with the design of the Peterbilt and its fuel tanks, created an unreasonable risk of compromising one or more of the Peterbilt's fuel tanks during a collision." (Doc. 46, p. 6.) Allegedly, the designs of the Peterbilt's fuel tank and the Auto Hauler resulted in the fire that injured Plaintiff and killed his wife. (Doc. 46-1, p. 10.) Plaintiff filed his Motion to Amend on January 6, 2021 just a little more than two weeks after the action was removed to this Court. (See id.) Plaintiff also provides evidence that he moved to amend his Complaint in state court prior to removal. (Doc. 46-2.) Accordingly, there has been no undue delay in filing this Motion. In addition, none of the Defendants in this action have filed any sort of opposition to the Motion to Amend, and thus none appear to believe that allowing Plaintiff to add Cottrell as a defendant in this action would cause them prejudice. The Court is also persuaded that allowing Plaintiff to amend his Complaint to join Cottrell as a defendant would not be futile. In his Complaint, Plaintiff asserts that he experienced severe burns and his wife died after the Peterbilt spilled fuel and spread fire to their car, (doc. 1-1, p. 15), and Plaintiff now states that he has learned that Cottrell's design of the Auto Hauler may have contributed to this fuel spill, (doc. 46, pp. 5–7; doc. 46-1, p. 10). Thus, Plaintiff has alleged facts to state claims for relief against Cottrell, and his

13

amendment is not futile.  See Fetterhoff v. Liberty Life Assurance Co., 282 F. App'x 740, 742 (11th Cir. 2008) (per curiam) ("An amendment is futile where it fails to state a claim for relief.").

Plaintiff's Motion to Amend also complies with Rule 20(a).  Plaintiff's claims against Cottrell, like his claims against the named Defendants, are based on the July 26, 2018 crash and not on any other occurrence or series of occurrences.  As such, his claims against Cottrell satisfy the first requirement pursuant to Rule 20(a), as they arise out of the same transaction or occurrence giving rise to his claims against the other Defendants.  The joinder of Cottrell also fulfills Rule 20(a)(2)'s second requirement.  While there may be different theories of liability against Cottrell and the named Defendants, the events leading up to Plaintiff's injuries, the cause of Plaintiff's injuries and his wife's death, and the extent of Plaintiff's damages constitute common questions of law and fact that must be resolved with respect to Plaintiff's claims against Cottrell and the named Defendants.  For all of these reasons, the Court **GRANTS** Plaintiff's Motion to Amend to Add Cottrell, Inc. as a Party Defendant.  (Doc. 46.)

**III.   Romulus's Motion for Judgment on the Pleadings and Westchester's Motion to Dismiss**

Also pending before the Court are Romulus's Motion for Judgment on the Pleadings, (doc. 5), and Westchester's Motion to Dismiss, (doc. 10).  Typically, "[a]n amended complaint supersedes an original complaint." Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999).  In addition, normally "the amended complaint renders moot [a prior-filed] motion to dismiss the original complaint because the motion seeks to dismiss a pleading that has been superseded." Geathers v. Bank of Am., N.A., No. 1:14–cv–00850–WSD, 2015 WL 348852, at *2 (N.D. Ga. Jan. 26, 2015).  However, in this case, the Amended Complaint has not actually been filed yet, and—more importantly—the proposed amendments to be made to the Complaint will only add a new Defendant along with new causes of action against that new

14

Defendant. The arguments that Romulus and Westchester make in their respective Motions will not be impacted by these amendments and thus are equally applicable to Plaintiff's Proposed Amended Complaint, so—for the sake of efficiency—the Court will consider these Motions without requiring either Defendant to refile them. See, e.g., Blair v. McCollum, No. 1:06–cv–1345–BBM, 2006 WL 8433206, at *2 n.7 (N.D. Ga. Oct. 5, 2006). ("[B]ecause many of [Defendant's] arguments in her motion to dismiss apply equally well to [Plaintiff's] Amended Complaint, the court will address those arguments without requiring [Defendant] to refile her Motion to Dismiss.").

In its Motion, Romulus argues that judgment on the pleadings is appropriate because it—like County Hall—is a risk retention group that is not subject to Georgia's direct action statutes. (Doc. 5, pp. 3–5.) According to both the Complaint and the Proposed First Amended Complaint, Romulus is a South Carolina corporation that is "the insurance carrier for Defendant United Road." (Doc. 1-1, pp. 10–11; doc. 46-1, pp. 5–6.) Plaintiff also alleges that he "is entitled to receive payments from Romulus for the tort liability of Defendants United Road and Desue upon a judgment in this matter." (Doc. 1-1, p. 29; doc. 46-1, p. 24.) While it is true that Romulus's full name is Romulus Insurance Risk Retention Group, Inc., the Court has already explained that federal law requires more than simply putting the term "risk retention group" in a company's name. (See Discussion Section I, infra.) Accordingly, based strictly on the pleadings, Romulus has not shown that it is a risk retention group. However, with its Reply Brief, Romulus attached two exhibits. (Doc. 57-1; doc. 57-2.) The first exhibit appears to be a record from the National Association of Insurance Commissioners that identifies Romulus as a "Captive Domestic Risk Retention Group." (Doc. 57-1, p. 2.) The second exhibit is a "List of Risk Retention Groups Registered in South Carolina as of May 2020" which includes Romulus. (Doc. 57-2, p. 6.) In its

Reply Brief, Romulus requests that the Court should, if necessary, exercise its discretion and convert its Motion to one for summary judgment and consider the submitted exhibits. (Doc. 57, pp. 4–5.)

In addition to Romulus's Motion for Judgment on the Pleadings, Westchester filed a Motion to Dismiss arguing that it is not subject to the Georgia's direct action statute. (Doc. 10, pp. 3–6.) According to Plaintiff's Complaint and Proposed First Amended Complaint, Westchester "was the insurer of United Road" and, "[p]ursuant to O.C.G.A. § 40–1–112 and O.C.G.A. § 40–2–140, . . . is subject to this direct action." (Doc. 1-1, pp. 27–28; doc. 46-1, p. 23.) However, Westchester argues that it is an excess insurer and that the Georgia direct action statutes do not apply to it. (Doc. 10, pp. 3–6.) In support of this argument, Westchester attached to its Motion an "Excess Business Auto [Truckers] Liability Policy" apparently issued by a company called Chubb to "URS Topco Corporation." (Doc. 10-1, pp. 2–3.) Westchester asserts that it is a division of Chubb and cites a Webpage to support this assertion. (Doc. 10, p. 3.) Westchester appears to be asserting that the "Excess Business Auto [Truckers] Liability Policy" is the operative insurance policy governing its relationship as an insurer to United Road, and that it shows Westchester is only United Road's excess insurer. (Id. at pp. 3–6.) Westchester then cites several Georgia cases to argue that "an insured's excess insurer cannot be subject to a direct action lawsuit." (Id. at p. 5.)

In his Response Brief, Plaintiff argues that it is inappropriate to grant Westchester's Motion to Dismiss because it relies on evidence outside of the Complaint. (Doc. 45, pp. 7–8.) Accordingly, both Romulus's Motion for Judgment on the Pleadings and Westchester's Motion to Dismiss turn on whether the Court should consider the evidence outside the pleadings and convert their respective Motions to ones for summary judgment.

"It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court. However, if the judge does consider these outside matters, i.e., if the judge does not exclude them, Rule 12[(d)] requires the judge to comply with the requirements of Rule 56." Jones v. Auto. Ins. Co. of Hartford, 917 F.2d 1528, 1531–32 (11th Cir. 1990). Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when discovery establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56, therefore, presumes that a party opposing summary judgment has been afforded an opportunity to conduct sufficient discovery so that it might be able to show that there does exist a genuine issue of material fact." Ventrassist Pty Ltd. v. Heartware, Inc., 377 F. Supp. 2d 1278, 1287 (S.D. Fla. 2005). Indeed, "[t]he law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." Jones v. City of Columbus, 120 F.3d 248, 253 (11th Cir. 1997). Here, in his Responses to both Romulus's Motion for Judgment on the Pleadings and Westchester's Motion to Dismiss, Plaintiff stated that, at that time, he had not had an opportunity to conduct any discovery. (Doc. 39, p. 9; doc. 45, p. 7.) District courts routinely decline to covert a motion to dismiss to a motion for summary judgment when the party opposing the motion has not benefited from discovery. See, e.g., Camejo v. Vapor Passion Corp., No. 14–22485–CIV, 2015 WL 161153, at *4 (S.D. Fla. Jan. 13, 2015) (declining to convert the motion to dismiss to one for summary judgment because it was "not clear from the record whether [p]laintiff has had the benefit of full discovery"); Chin Hui Hood v. JeJe Enters., Inc., No. 1:14–cv–02405–AT, 2014 WL 12767347, at *2 (N.D. Ga. Oct. 3, 2014) (refusing to convert the motion because "the Court would be required to consider the limited evidence submitted by the parties thus far in the absence of full discovery"); Great Am. Ins. v. Am.

17

Pan & Eng'g Co., No. 3:12-cv-129-TCB, 2012 WL 13028208, at *3 (N.D. Ga. Dec. 11, 2012) ("The Court, however, declines to convert [plaintiff's] motion to one for summary judgment at this early stage of the proceedings and instead will simply disregard his affidavit and resignation letter."). Because Plaintiff should be afforded the opportunity to conduct at least some discovery before these issues are determined, the Court declines to convert either of Romulus or Westchester's respective Motions to motions for summary judgment. Because Romulus is unable to show that it is a risk retention group based solely on the pleadings, the Court **DENIES** its Motion for Judgment on the Pleadings. (Doc. 5.) Similarly, Westchester cannot show, based on Plaintiff's Complaint (or the Proposed Amended Complaint), that it is an excess insurer, so the Court also **DENIES** its Motion to Dismiss. (Doc. 10.) These denials, however, do not preclude Romulus or Westchester from raising these arguments again later, through properly filed motions for summary judgment.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff Kenneth McIntire's Motion to Remand, (doc. 51), and **GRANTS** Defendants' Joint Motion to Dismiss Defendant County Hall Insurance Co., (doc. 7). The Court also **GRANTS** Plaintiff's Motion to Amend the Complaint to Add Cottrell, Inc. as a Party Defendant. (Doc. 46.) Plaintiff shall have **TEN (10) DAYS** from the date of this Order to file his amended complaint to be entered on the docket as a stand-alone entry. However, pursuant to the Court's above ruling dismissing County Hall from this action, Plaintiff shall not name County Hall as a defendant or assert any claims against County Hall in his Amended Complaint. Finally, the Court **DENIES** Defendant Romulus Insurance Risk Retention Group, Inc.'s Motion for Judgment on the Pleadings, (doc. 5), and **DENIES** Defendant Westchester Fire Insurance Company's Motion to Dismiss, (doc. 10). The Court reminds the parties of their

obligation to meet and confer and file a Rule 26(f) report within twenty-one days of the date of this Order.  (See doc. 68.)  Additionally, the parties are expected to comply with the directives set forth in the Court's Rule 26 Instruction Order, (doc. 21), including the requirement to use the Form Rule 26(f) Report for use in Judge Baker cases located on the Court's website www.gasd.uscourts.gov under "Forms."

**SO ORDERED**, this 14th day of May, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA